UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CORDALE BELL,

    Petitioner,

v.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:14-cv-01237-JCM-GWF

ORDER

This counseled first-amended 28 U.S.C. § 2254 habeas petition by petitioner Cordale Bell is before the court for adjudication on the merits (ECF No. 7).

I. **Background & Procedural History**

On February 3, 2009, Bell pleaded guilty to one count of kidnapping in the first degree with use of a deadly weapon (exhibits 29, 30).[1] The state district court sentenced him to a term of life with the possibility of parole after five years, with a consecutive term of life with the possibility of parole after five years for the deadly weapon enhancement, with 626 days' credit for time served. Exh. 32. The court entered the judgment of conviction on March 10, 2009. Exh. 33.

The Nevada Supreme Court affirmed the convictions on March 10, 2010, and remittitur issued on April 7, 2010. Exhs. 42, 43.

Bell filed a state postconviction habeas corpus petition, and counsel filed a supplemental brief. Exhs. 44, 55. The state district court denied the petition on

---

[1] Exhibits referenced in this order are exhibits to petitioner's first-amended petition, ECF No. 7, and are found at ECF Nos. 8-11.

1

November 9, 2012. Exh. 67. The Nevada Supreme Court affirmed the denial of the petition on October 17, 2013, and remittitur issued on November 14, 2013. Exhs. 74, 75.

Bell dispatched his federal habeas petition for mailing on March 29, 2014 (ECF No. 4). This court granted Bell's motion for appointment of counsel (ECF No. 3). Bell filed a counseled, first-amended petition (ECF No. 7). Respondents have now answered the petition, and Bell replied (ECF Nos. 23, 25).

II. **Legal Standards**

a. **Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing

2

the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate

3

panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. Finally, in conducting an AEDPA analysis, this court looks to the last reasoned state-court decision. *Murray v. Shriro*, 745 F.3d 984, 996 (9th Cir. 2014).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

4

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The

5

> *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### III. **Instant Petition**

Bell argues in ground 2 that his guilty plea was not entered knowingly, intelligently, and voluntarily, in violation of his Fifth and Fourteenth Amendment due process rights (ECF No. 7, p. 14). He claims that at the time he entered the plea, he was regularly hearing voices, was on anti-psychotic medication and was actively suicidal. *Id.*

In ground 1, Bell alleges that his plea counsel rendered ineffective assistance and that, but for such ineffective assistance, Bell would not have pleaded guilty. *Id.* at 9-13. Bell contends that his counsel knew or should have known that Bell's mental health and medication history made it impossible for him to enter a knowing, voluntary, and intelligent plea, but counsel allowed the plea to go forward without notifying the court of the issues or seeking any accommodation for his client. *Id.*

A guilty plea must be made knowingly, voluntarily and intelligently; such inquiry focuses on whether the defendant was aware of the direct consequences of his plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A criminal defendant may not plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The

competency standard for pleading guilty is the same as the competency standard for standing trial. *Id.* at 397. As long as a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . has a rational as well as factual understanding of the proceedings against him," he is competent to plead guilty. *Dusky v. U.S.*, 362 U.S. 402 (1960); *see also Godinez*, 509 U.S. at 399.

The state court records reflect that at the end of July 2007, shortly after Bell was arrested, two psychologists evaluated his competency. Exhs. 5, 6. Both psychologists noted that Bell was taking Prozac, Geodon and Benadryl, and they concluded that Bell was legally competent, understood the nature of the charges, and was capable of assisting in his defense. *Id.*

Bell's counsel arranged for two additional evaluations. A forensic psychiatric assessment was completed in June 2008. Exh. 81. The psychiatrist stated that although Bell reported hallucinations and was taking anti-psychotic medications, his history was not typical of a psychotic disorder, "particularly since it emerged coincident to his incarceration." *Id.* at 7. The psychiatrist concluded that it was unlikely that a psychotic disorder contributed to Bell's offense. He noted that although Bell claimed that he was suffering withdrawal from Prozac at the time of the offense, due to the nature of Prozac it was unlikely that two days without the medication caused any withdrawal that could be associated with the offense. *Id.*

Bell's counsel arranged for an intellectual and cognitive evaluation in January 2009, about two weeks before he entered his plea. Exh. 83. At that point he was taking Geodone and Benadryl (for side effects). The doctor did not believe that Bell was an imminent suicide risk. Her tests indicated that Bell had an IQ in the low average range. *Id.* at 4.

On February 2, 2009, just before trial was to commence, the State made Bell a plea offer. Exh. 84. That State offered that if Bell pleaded guilty to first-degree kidnapping

7

with use of a deadly weapon the State would dismiss the following charges: burglary with a deadly weapon; home invasion with a deadly weapon; assault with a deadly weapon; two counts of battery with a deadly weapon; and child endangerment. *Id.* The State would further dismiss the charges in another case in which Bell was charged with domestic battery and simple battery. *Id.* The next day, Bell signed the plea memorandum and entered his plea. Exhs. 29, 30. During the plea colloquy, Bell indicated that he was satisfied with his counsel's assistance, he understood the plea agreement and the possible sentences, he committed the charged acts, and he voluntarily chose to plead guilty. Exh. 29.

The state district court rejected Bell's claims in his state postconviction petition that he was incompetent at the time of his guilty plea and that counsel was ineffective for failing to inform the court of his incompetency:

> Here, petitioner's claim that he was incompetent at the time of his plea is both conclusory and repelled by the record. It is conclusory because it fails to identify any facts in relation to the legal standard for determining competency. *See Melchor-Gloria v. State*, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983) (holding that the test for determining competency is "whether [the defendant] has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him" (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (alteration in original)). It is repelled by the record because petitioner told this court during the plea canvass that he had read and understood the guilty plea memorandum (Change of Plea Transcript, 4). Petitioner states in the plea memorandum that he and his counsel have discussed the elements of the crime, and the constitutional rights he was waiving. *Id.* at 5-9. Defense counsel did not voice any concern about his client's competency at the plea canvass. Thus, the record shows the petitioner understood the nature of the charge and that he was able to assist counsel. Since the record repels the idea that petitioner was not competent when he pleaded guilty, the court dismisses the supplemental petition.

Exh. 61, pp. 1-2.

The Nevada Supreme Court affirmed the denial of these claims:

> The district court heard argument on the State's motion to dismiss the supplemental petition and found that Bell's claim was (1) conclusory

8

> because it failed to identify facts relevant to the standard for determining competency and (2) repelled by the record because the record showed that Bell understood the nature of the charge and was able to assist defense counsel. The district court's findings are supported by the record and are not clearly wrong, *see Allen v. Calderon*, 408 F.3d 1150, 1152 (9th Cir. 2005) ("Findings of fact made by the district court relevant to the dismissal of the habeas petition are reviewed for clear error."), and we conclude that the district court did not err by dismissing Bell's supplemental petition without an evidentiary hearing.

Exh. 74.

Bell's claims that he did not enter his guilty plea knowingly, voluntarily and intelligently due to his serious mental health issues and that his counsel was ineffective because he failed to inform the court that Bell was incapable of entering a knowing, voluntary and intelligent plea are belied by the record. Bell has failed to demonstrate that the Nevada Supreme Court's decisions on the claims that correspond to federal grounds 1 and 2 were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to grounds 1 and 2. The petition, therefore, is denied in its entirety.

IV. **Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Bell's petition, the court finds that reasonable jurists would not find its determination of any grounds to be debatable pursuant to S*lack*. The court therefore declines to issue a certificate of appealability.

V. **Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 7) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: September 5, 2017.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE